**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CATHY JO THOMSON and DONALD FRED THOMSON, Individually and On Behalf of All Others Similarly Situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>VOLVO CAR NORTH AMERICA, LLC, and VOLVO CAR USA, LLC,<br><br>*Defendants*. | Civil Action No. 25-17193<br><br>**OPINION**<br><br>September 10, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court on Defendants Volvo Car North America, LLC ("VCNA") and Volvo Car USA, LLC's ("VCUSA") (collectively, "Defendants") Motion to Dismiss Plaintiffs Cathy Jo Thomson and Donald Fred Thomson's (collectively, "Plaintiffs") Class Action Complaint. (ECF 1, "Class Action Complaint" or "CAC"; ECF 10, "Motion" or "Mot.") Plaintiffs opposed the Motion. (ECF 15, "Opposition" or "Opp.") Defendants filed a reply. (ECF 17, "Reply.") The Court has decided this Motion upon the submissions of the parties and oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED**. Plaintiffs' Class Action Complaint is **DISMISSED** without prejudice.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]

This nationwide class action arises out of two alleged design defects in vehicles designed, manufactured, and sold by Defendants. (CAC ¶ 1.) The Court only summarizes the facts necessary to resolve the current Motion.

Plaintiffs Cathy Jo Thomson ("Ms. Thomson") and Donald Fred Thomson ("Mr. Thomson") are residents of Kansas and lessees of two 2024 Volvo C40 Recharge Pure Electric vehicles. (*Id.* ¶¶ 10-11.) Plaintiffs leased their two vehicles on January 31, 2025 from Premier Volvo Cars in Overland Park, Kansas. (*Id.* ¶¶ 59, 72.) VCNA and VCUSA are limited liability companies incorporated in Delaware and both maintain their principal place of business in New Jersey. (*Id.* ¶¶ 14-15.) VCNA is the parent of VCUSA, and serves as Volvo AB's[2] regional operational hub for marketing, brand communications, and warranty program administration in the United States. (*Id.* ¶ 14.) VCUSA is a wholly owned subsidiary of Volvo AB, and serves as the exclusive importer and distributor of Volvo vehicles in the United States. (*Id.* ¶ 15.) VCUSA imports, markets, and sells Volvo passenger vehicles in the United States and communicates with U.S.-based dealers and customers. (*Id.*) VCUSA issues the New Vehicle Limited Warranty ("NVLW") and controls the administration of warranty claims. (*Id.*; ECF 10-3, "NVLW".)

Plaintiffs bring this action individually and as representatives of a Class of similarly situated consumers. (CAC ¶ 13.) Specifically, Plaintiffs bring this action on behalf of themselves

---

[1] The facts and procedural history are drawn from the Class Action Complaint (CAC) and documents integral to or relied upon by the Class Action Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). For the purposes of a motion to dismiss, the facts drawn from the Class Action Complaint are accepted as true. *See Fowler v. UMPC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009).

[2] Volvo AB is a Swedish public limited company that serves as the ultimate parent of numerous operating subsidiaries worldwide, including VCUSA. (*Id.* ¶ 17.) Volvo AB is not a party to this action. (*See id.*)

and as a class action on behalf of a National Class ("Nationwide Class"), or, in the alternative, on behalf of a State Class. (*Id.* ¶¶ 96-97.) Plaintiffs specifically allege design defects in two features of Defendants' vehicles: the Rear Auto Brake ("RAB") feature, and the Dashboard Drive Display ("DD") feature. (*Id.* ¶¶ 2-3.)

The RAB feature is designed to use cameras and radar technology to detect objects in the surrounding area, and automatically brake when the car is in reverse or rolls backwards and senses objects in near proximity. (*Id.* ¶¶ 2, 21-23.) Plaintiffs allege this feature is defective and causes drivers to experience spontaneous engagement of the automatic braking system, which results in injury-causing whiplash-like motions. (*Id.* ¶ 2.) Specifically, Mr. Thomson alleges he experienced spontaneous RAB activation in his vehicle in February, August, and September of 2025. (*Id.* ¶¶ 61-63.) Ms. Thomson alleges she experienced spontaneous RAB activation "on multiple occasions," and that the "sudden braking thrust her violently forward against her seatbelt and then backwards into the headrest." (*Id.* ¶¶ 74, 76.) In addition, Plaintiffs cite various anonymous consumer complaints posted on the National Highway Traffic Safety Administration's ("NHSTA") forum, Reddit, and XC40forum.com describing similar incidents with the 2024 Volvo XC40's RAB feature. (*Id.* ¶¶ 28-31.)

The DD feature is a dashboard display of driving features such as the speedometer, odometer, lane assists, blinkers, and navigation. (*Id.* ¶¶ 3, 33.) Plaintiffs allege that this feature is defective, and experiences spontaneous blackouts of all or parts of the digital screens which impair driving abilities. (*Id.*) Specifically, Mr. Thomson alleges that since February 2025, he experienced numerous spontaneous blackouts of the Instrumental Panel ("IP"), the part of the DD that displays information regarding the vehicle's gauges, warning symbols, and assistive driving functions. (*Id.* ¶¶ 33, 64.) Ms. Thomson alleges that the IP portion of her DD display would turn off at least two

times per week while she was driving, causing her to lose access to her speedometer, blinker function, lane assist features, and navigation map. (*Id.* ¶¶ 74, 77.) Further, as with the RAB, Plaintiffs cite various anonymous consumer complaints posted on various online forums describing similar incidents with the 2024 Volvo XC40's DD feature. (*Id.* ¶¶ 44-48.)

### A. Procedural History

Plaintiffs initiated this action against Defendants on November 4, 2025. (*See id.*) In their Class Action Complaint, Plaintiffs allege violations of the New Jersey Consumer Fraud Act ("NJCFA") and Kansas Consumer Protection Act ("KCPA") (Counts I and IV), and breaches of express warranty (Count II) and implied warranty (Count III). (*Id.* ¶¶ 103-152.) Defendants timely filed a Motion to Dismiss on February 4, 2026. (Mot.) Plaintiffs opposed the Motion on April 6, 2026. (Opp.) Defendants filed a reply on April 20, 2026. (Reply.) This Court held oral argument on the Motion on September 1, 2026. (ECF 27.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) permits courts to dismiss actions for lack of subject matter jurisdiction. "A motion to dismiss for want of standing is ... properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007). Rule 12(b)(1) motions may challenge subject matter jurisdiction based upon the face of the complaint or its underlying facts. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009); *Pittman v. Metuchen Police Dept.*, No. 08-2373, 2009 WL 3207854, at *1 (D.N.J. Sept. 29, 2009). A facial attack questions the sufficiency of the pleading and requires the trial court to accept the allegations in the complaint as true. *Common Cause of Pa.*, 558 F.3d at 257; *Pittman*, 2009 WL 3207854, at *1. A factual attack, by contrast,

calls upon the court to weigh the evidence. *Pittman*, 2009 WL 3207854, at *1.

Motions to dismiss for lack of standing are best understood as facial attacks. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012) ("Rule 12(b)(1) motions are properly understood as facial attacks because they contend that the [a]mended [c]omplaints lack sufficient factual allegations to establish standing"). In assessing a facial attack on subject matter jurisdiction under Rule 12(b)(1), courts apply the familiar 12(b)(6) standard. *Id.* ("In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim ….").

**B. Rule 8(a)**

Federal Rule of Civil Procedure Rule 8(a)(2) provides that any pleading including a claim for relief shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Complaints that "assert multiple claims against multiple defendants without specifying which of them are responsible for which acts or omissions" are often referred to as "impermissible 'group' pleadings" and violate Rule 8's pleading requirements. *See Cambridge Mutual Fire Ins. Co. v. Stihl Inc.*, No. 22-5893, 2023 WL 5928319, at *2 (D.N.J. Sept. 12, 2023); *Foulke v. Twp. of Cherry Hill*, No. 23-2543, 2024 WL 3568841, at *7 (D.N.J. July 29, 2024). The use of "vague group pleading undermines the notice pleading regime of Rule 8, since it improperly seeks to make all defendants liable for all conduct alleged in the complaint." *Karupaiyan v. Atlantic Realty Dev. Co., Inc.*, No. 18-12532, 2020 WL 13728036, at *2 (D.N.J. Jan. 17, 2020) (internal citations and quotation marks omitted). "Alleging that 'Defendants' undertook certain illegal acts—without more—injects an inherently speculative nature into the pleadings, forcing both the Defendants and the Court to guess who did what to whom and when."

*Japhet v. Francis E. Parker Mem'l Home, Inc.*, No. 14-1206, 2014 WL 3809173, at *2 (D.N.J. July 31, 2014).

### C. Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements for claims of fraud. Fed. R. Civ. P. 9(b). "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). "To satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). Plaintiffs must also specify the allegations of fraud that apply to each defendant. *See MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005).

## III. <u>ANALYSIS</u>

### A. Defendants' Motion to Dismiss the Class Action Complaint for Lack of Article III Standing

#### 1. Nationwide Class Standing

Defendants argue that Plaintiffs lack Article III standing to assert claims on behalf of unnamed class members who reside or purchased vehicles in states other than the state(s) in which Plaintiffs purchased or leased their vehicles. (Mot. at 7-8.) In response, Plaintiffs argue that Defendants' objection to standing is a typicality challenge that should be solved at the class certification stage, not the motion to dismiss stage. (Opp. at 7-8.)

"[T]here is disagreement in this district over whether plaintiffs in a class action may assert claims under the laws of states where the complaint does not allege connections between the named plaintiffs and those states." *Rains v. Jaguar Land Rover N. Am., LLC*, No. 22-4370, 2023 WL 6234411, at *4 (D.N.J. Sept. 26, 2023) (quoting *Cohen v. Subaru of Am., Inc.*, No. 20-08442, 2022 WL 721307, at *6 (D.N.J. Mar. 10, 2022)). "Some courts have found that this is not a standing issue, but a question of predominance properly considered under Rule 23(b)(3)." *Cohen*, 2022 WL 721307, at *6. However, this Court, and many others in this district, have "agree[d] with the authority finding plaintiffs must demonstrate standing for each claim they seek to assert." *Rains*, 2023 WL 6234411, at *4; *see, e.g.*, *Rose v. Ferrari N. Am, Inc.*, No. 21-20772, 2025 WL 815417, at *12 (D.N.J. Mar. 14, 2025); *Snowdy v. Mercedes-Benz USA, LLC*, No. 23-1681, 2024 WL 1366446, at *5 (D.N.J. Apr. 1, 2024); *Craft v. BMW of N. Am., LLC*, No. 24-06826, 2024 WL 5197080, at *8 (D.N.J. Dec. 23, 2024); *Reinkraut v. FCA US LLC*, No. 23-2792, 2024 WL 4052986, at *9 (D.N.J. Sept. 5, 2024).

"The requirements for standing do not change because Plaintiffs fashion their claims in a purported nationwide class." *Tijerina v. Volkswagen Grp. of Am., Inc.*, No. 21-18755, 2023 WL 6890996, at *8, 21 (D.N.J. Oct. 19, 2023) (citing *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017) ("The requirements for standing do not change in the class action context.")). Indeed, "named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent." *See id.* at *8. Otherwise, "a plaintiff would be able to bring a class action complaint under the laws of nearly every state ... without having to allege concrete, particularized injuries relating to those states, thereby dragging defendants into expensive nationwide class discovery, potentially without a good-faith

basis." *Ponzio v. Mercedes-Benz USA, LLC*, 447 F. Supp. 3d 194, 223 (D.N.J. 2020). Therefore, Plaintiffs are limited to asserting claims on behalf of individuals in states where at least one named Plaintiff has standing to assert a claim. *See Tijerina*, 2023 WL 6890996, at *8; *Rains*, 2023 WL 6234411, at *4; *Cohen*, 2022 WL 721307, at *6; *Snowdy*, 2024 WL 773582. As such, Counts I-III are **DISMISSED** without prejudice as to the Nationwide Class.

**2. Plaintiffs' Individual and State Class Standing with Respect to Count I**

Defendants also argue that Plaintiffs lack standing to bring any claim under the NJCFA because Plaintiffs were not injured in New Jersey and the statute lacks extraterritorial scope. (Mot. at 9.) Plaintiffs argue that their ability to raise claims under the NJCFA is a choice-of-law issue and that Defendants have not met their burden of proving that New Jersey law does not apply. (Opp. at 11-12.)

This Court has held that named plaintiffs in a class action lack Article III standing to bring NJCFA claims when they have not suffered an injury in New Jersey. *See Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 149-51 (D.N.J. 2025) (concluding that plaintiffs lacked standing to bring claims under the NJCFA where plaintiffs did not reside nor suffer injury in New Jersey); *see also Hoffman v. Primal Force, Inc.*, No. 20-20600, 2021 WL 7209452, at *5 (D.N.J. Jul. 22, 2021) ("The Third Circuit has instructed that under conflict-of-law rules, consumers outside of New Jersey lack standing to bring claims under the NJCFA."). Here, Plaintiffs allege no facts in their Class Action Complaint indicating that they reside in or suffered an injury in New Jersey. (*See generally* CAC.)

Further, "[e]ven if Plaintiffs have Article III standing to assert a NJCFA claim, New Jersey's choice-of-law principles bar Plaintiffs from doing so." *Serrano*, 773 F. Supp. 3d at 151. This Court and Circuit have consistently concluded that plaintiffs may not sue under the NJCFA

where the "transaction in question bears no relationship to New Jersey" other than the location of corporate headquarters. *See Cooper v. Samsung Elec. Am.*, 374 F. App'x 250, 255 (3d Cir. 2010); *Maniscalco v. Brother Intern. (USA) Corp.*, 709 F.3d 202, 208-09 (3d Cir. 2013). Plaintiffs plead no facts establishing any connection to New Jersey beyond the fact that Defendants maintain their principal places of business within the state. (*See* CAC ¶¶ 14-15.)

A complete choice-of-law analysis supports this conclusion. First, the NJCFA and KCPA conflict. *See Serano*, 773 F. Supp. 3d at 152. As Defendants noted at oral argument, the KCPA requires plaintiffs to plead unequal bargaining power between the parties to establish an unconscionable act or practice. (*See* Transcript of Oral Argument at 9:16-10:1)[3]; *Doe v. Lyft, Inc.*, 756 F. Supp. 3d 1110, 1125 (D. Kan. 2024). The NJCFA does not maintain this requirement with respect to proving unconscionable acts. *See Dewey v. Volkswagen AG*, 558 F. Supp. 2d 505, 525 (D.N.J. Apr. 1, 2008); *Rapoport v. Caliber Home Loans, Inc.*, 617 F. Supp. 3d 241, 246-47 (D.N.J. 2022).

Second, Kansas has the "'most significant relationship' to Plaintiffs' consumer fraud claims." *See Serrano*, 773 F. Supp. 3d at 152. Courts look to six factors in Section 148 of the Restatement (Second) of Conflict of Laws to determine which State has the most significant relationship:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the representations, (c) the place where the defendant made the representations, (d) the domicil[e], residence, nationality, place of incorporation, and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which has been induced to enter by the false

[3] At the Court's request, the assigned court reporter provided an unofficial transcript of the oral argument that occurred on September 1, 2026. All citations to the transcript in this Opinion are to the unofficial version. The parties may request an official transcript on the docket.

representations of the defendant.

*See id.* at 152-53 (quoting Restatement (Second) Conflict of Laws § 148(2) (1971)). In their Class Action Complaint, Plaintiffs plead no facts indicating that they had any connection to New Jersey. Instead, Plaintiffs plead facts indicating that they reside and leased their vehicles in Kansas. (*See* CAC ¶¶ 11, 59, 72.) Additionally, at oral argument, Plaintiffs admitted that the Restatement § 148(2) factors favor the application of Kansas law. (Transcript of Oral Argument at 9:3-5.) Plaintiffs' counsel explicitly acknowledged that Plaintiffs entered into leases with Defendants in Kansas, received representations from Defendants in Kansas, acted in reliance on Defendants' representations in Kansas, and reside in Kansas, that the tangible subject of the transaction (the vehicles) were located in Kansas, and that the contract lease was signed and performed by Plaintiffs in Kansas. (Transcript of Oral Argument at 6:8-8:17.) Finally, even if Plaintiffs can prove Defendants misrepresented or omitted facts about the vehicles from their New Jersey headquarters, "those facts, if established, are still not enough to justify applying the NJCFA here." *See id.* at 153; *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 448 (D.N.J. 2012) (concluding that the fact that the defendant was headquartered, manufactured its products, ran its marketing, made decisions not to disclose defects, and prepared an express warranty in New Jersey were "insufficient to confer New Jersey with a more significant interest in Plaintiff's consumer fraud claim than California"). As in *Cooper*, Plaintiffs' claims "bear[] the most significant relationship" with Kansas, the state in which the relevant vehicles were leased and driven. *See Cooper*, 374 F. App'x at 255; (Transcript of Oral Argument at 9:3-5.)

The Court then views the Restatement § 148(2) factors against the Restatement § 6 factors, which are "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the field of tort law; (4) the interests of judicial administration; and (5) the competing

interests of the states." *See Serrano*, 773 F. Supp. 3d at 153. The factors also favor Kansas. "First, the interests of interstate comity favor applying the law of the individual claimant's own state," which is Kansas. *See Maniscalco*, 709 F.3d at 209. Second, the interest of the parties favors applying Kansas law, since it is reasonable to assume that the parties expected Kansas law to apply given that the only contact between the parties took place in Kansas. *See id.* at 209-10. The third factor is neutral, because "[c]onsumer fraud law serves the dual purposes of compensating injured parties," which favors Kansas law, and "deterring corporate misconduct," which favors New Jersey law. *See id.* at 210. Fourth, "New Jersey courts have found that the interests of judicial administration must yield to the interests of the other factors." *Id.* And fifth, Kansas's interest in "having its law apply to its own consumers outweighs the interests of New Jersey in protecting out-of-state consumers from consumer fraud." *Id.* Given that both the Restatement § 148(2) and § 6 factors favor Kansas law, Kansas has the most significant relationship to Plaintiffs' consumer fraud claims. As such, the Court concludes that Plaintiffs may not bring a claim under the NJCFA under the facts alleged. Count I is further **DISMISSED** without prejudice as to Plaintiffs in their individual capacities and as to the State Class.[4]

### B. Defendants' Motion to Dismiss the Class Action Complaint for Impermissible Group Pleading

Defendants ask this Court to dismiss the entirety of Plaintiffs' Class Action Complaint for

[4] The Court notes that Plaintiffs did not respond to Defendants' argument that they lacked standing to bring a NJCFA claim in their opposition brief. (*See generally* Opp.; Reply at 1.) While the Court chose to review this argument on the merits, it notes that Plaintiffs also waived their claim with respect to Count I due to their failure to respond. *See Griglak v. CTX Mortg. Co., LLC*, No. 09-5247, 2010 WL 1424023 (D.N.J. April 8, 2010) ("The failure to respond to a substantive argument to dismiss a count, when a party otherwise files opposition, results in a waiver of that count."); *Marjac, LLC v. Trenk*, No. 06-1440, 2006 WL 3751395 (D.N.J. Dec. 19, 2006) ("Plaintiffs do not address their § 1983 claims [in their opposition to a motion to dismiss] ... and has thus abandoned them.") (citing cases).

impermissible group pleading. (Mot. at 6.) In response, Plaintiffs argue Courts routinely permit group pleading where "fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other." (Opp. at 6.)

This Court has allowed plaintiffs to engage in group pleading in the automative context where plaintiffs plead that parent or subsidiary companies act as agents or alter egos of each other, are jointly responsible for the design, manufacture, repair, and servicing of the vehicles, and where the express warranties differentiate between the obligations of the different entities. *See Kimball v. Volkswagen Grp. of Am., Inc.*, 2023 WL 2331569, at *8 (D.N.J. Mar. 2, 2023) (dismissing a plaintiff's claims against two subsidiaries of Volkswagen Aktiengesellschaft for impermissible group pleading where the complaint did not "include allegations that plausibly support Plaintiff's agency or alter ego allegation"); *Ponzio*, 447 F. Supp. 3d at 226 (denying motion to dismiss for group pleading where plaintiffs emphasized that they "assert common allegations against MBUSA and Daimler because they … act as agents and/or alter egos of each other"); *Craft*, 2024 WL 5197080, at *8 (denying motion to dismiss for group pleading where a plaintiff alleged the automotive defendants jointly performed the "design, manufacture, distribution, service, repair, modification, installation, and decisions regarding the Class Vehicle" defect and acted as "agent[s] and/or employee[s] of each other"); *Longmeadow One Solar LLC, et al. v. Trina Solar Co., LTD*, No. 24-3223, 2025 WL 2476522, at *4 (D.N.J. Aug. 28, 2025) (denying a motion to dismiss for group pleading where the complaint alleged that the defective products were covered by a warranty issued by one defendant, and that the warranty required claims to be directed to the second defendant).

Plaintiffs make no such allegations here. In their Class Action Complaint, Plaintiffs state that VCNA serves as Volvo AB's regional operational hub for marketing, brand communications,

and warranty program administration, and is the parent of VCUSA. (CAC ¶¶ 16-18.) Plaintiffs also state that VCUSA is a wholly owned subsidiary of Volvo AB and is the importer and distributor of Volvo vehicles in the United States. (*Id.* ¶15.) However, at no point do Plaintiffs allege that VCUSA is an agent or alter ego of VCNA. *See Kimball*, 2023 WL 2331569, at *8. Plaintiffs also do not allege that VCNA and VCUSA jointly performed the design, distribution, or maintenance of the defective vehicles. *Craft*, 2024 WL 5197080, at *8. Finally, the express warranty does not distinguish between VCUSA and VCNA's responsibilities. (*See* NVLW); *Longmeadow One Solar LLC, et al.*, 2025 WL 2476522, at *4. VCNA is not even mentioned in the express warranty. (*See id.*)

Accordingly, this Court concludes that Plaintiffs engage in group pleading which fails to put Defendants on notice of the allegations of fraud and breach of warranty against them, in violations of both Rule 8(a) and Rule 9(b). *See Cambridge Mutual Fire Ins. Co*, 2023 WL 5928319, at *2; *MDNet, Inc. v. Pharmacia Corp.*, 147 F. App'x 239, 245 (3d Cir. 2005). As such, the remaining counts—Counts II, III, and IV—are **DISMISSED** without prejudice as to Plaintiffs in their individual capacities and the State Class.[5]

[5] Defendants also allege that the entire Class Action Complaint should be dismissed for failure to plead a defect under Rule 12(b)(6), Counts II and III should be dismissed against VCNA because VCNA is not a warrantor of Plaintiffs' vehicles, Count II should be dismissed because Plaintiffs allege design defects not covered by the NVLW, and Counts I and IV should be dismissed for failing to state a claim and meet the fraud pleading standard under Rules 12(b)(6) and 9(b). Given that the Court grants Defendants' Motion for a lack of standing under Rule 12(b)(1) and for impermissible group pleading under Rules 8(a) and 9(b), the Court refrains from engaging in analysis of Defendants' additional arguments at this time.

## IV. CONCLUSION

For the reasons stated above, the entirety of Plaintiffs' Class Action Complaint is **DISMISSED** without prejudice. Plaintiffs have 30 days to file a second amended complaint in accordance with this Opinion. An appropriate order follows.

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Parties